UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim. No. 05-10173-JLT |
| v. | ) | |
| DANNY M. KELLY, | ) | |
| Defendant | ) | |

UNITED STATES' SENTENCING MEMO

The United States asks the Court to deny Danny Kelly's request for a sentence of probation and to instead impose the statutory maximum two-year sentence, which is below the 27-33 month Guideline Sentencing Range. PSR ¶113. The extortion scheme to which Kelly pled guilty was complex, long-running, extremely destructive, and designed to generate substantial financial gain for Kelly. While the defense psychiatrist has opined that Kelly suffers from a mental illness, Kelly should not be able to rely on this diagnosis to escape punishment for his deliberate and destructive extortion scheme.

A.   Overview of the extortion

From November, 2004 through February, 2005, Danny Kelly cut 18 telephone, cable TV, and internet cables, as part of his scheme to extort money from Comcast and Verizon. PSR ¶7. During this period, Kelly sent a series of anonymous extortion letters to Comcast and Verizon, in which he took responsibility for the cable cuts and threatened to continue and increase this activity if the companies did not establish multiple bank accounts for him and make monthly deposits into these accounts. Id. In an effort to conceal his identity, Kelly

insisted that the victim companies communicate with him by setting up websites at specific internet addresses that he provided. PSR ¶8. He then accessed these websites via anonymizing web servers in Europe, which hid his identity and location from Verizon and Comcast. In an effort to placate Kelly, Verizon complied with his instruction to create a bank account for him and placed $10,000 in the account. Before he was able to remove the money from the account, however, the FBI succeeded in locating Kelly and searching his house. While Kelly did not collect any of the extortion payments he demanded, his cable cuts disrupted service to thousands of Massachusetts residents and caused the companies to spend more than $300,000 on repair work and other response costs. See 11/15/05 Verizon letter to Court (Attached).

    B.    Mental health sentencing issues

The government does not dispute the opinion of the defense expert, Dr. Gray, that Kelly suffers from some form of mental illness. But the government contends that the facts set out in the PSR demonstrate that Kelly knew without a doubt that his extortion scheme was wrong and that he had complete control over his behavior. There is, therefore, no basis to depart or deviate from a 24-month prison sentence to a sentence of probation .

In order to establish significantly reduced mental capacity under U.S.S.G. §5K2.13, the defendant must demonstrate that he suffered from a "significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior the defendant knows is wrongful." U.S.S.G. § 5K2.13,

app. note 1.[1] The burden of proving causation rests on the defendant. United States v. Regan, 989 F.2d 44, 45 (1st Cir. 1993).

The complex nature of Kelly's scheme alone undermines his claim that he was suffering from "a significantly reduced mental capacity" when he orchestrated it. U.S.S.G. § 5K2.13. See, e.g., United States v. Leandre, 132 F.3d 796, 805 (D.C. Cir. 1998) ("mental acumen required for the planning, preparation, and execution of a crime is a logical starting place" for evaluating a defendant's cognitive capacity); United States v. Goossens, 84 F.3d 697, 701 (4th Cir. 1996) (same); Regan, 989 F.2d at 46 (noting defendant's skillful and comprehensive methods to divert bank funds demonstrated remarkable ability, not diminished capacity).

The fact that Kelly took elaborate steps to conceal his identity from Verizon and Comcast shows that he was well aware of the fact that what he was doing was wrong and that he was able to control his behavior well enough to remain anonymous until the FBI identified him. Furthermore, Kelly had sufficient mental capacity to devise and execute an extortion scheme that allowed him to remain anonymous for four months while disrupting communications service to thousands of Verizon customers and that ultimately forced Verizon to establish a bank account for him and fund it with $10,000. Finally, his motivation for committing this crime was rational – he wanted money. While Kelly's

---

[1] While the Guidelines are no longer binding on the Court, section 5K2.13, and the case law interpreting it, provides useful guidance for how the Court should consider Kelly's sentencing request.

sentencing memo refers to his "delusional plan" to "save his family," the bottom line is that, like most criminal defendants, he wanted or needed money, but unlike most others, he was able to come up with, and execute, a clever plan to obtain it.

    C.    <u>24 months is the reasonable sentence under 18 U.S.C. §3553(a)</u>

Under 18 U.S.C. §3553(a), a sentence needs to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and it must also "afford adequate deterrence to criminal conduct." Here, Kelly's extortion cut off all communications service (including "911 emergency"service) to thousands of Verizon customers and required Verizon to spend more than $300,000 in response costs. The Court should impose a sentence that will indicate to Kelly and to others who might consider disrupting the communications infrastructure for their personal gain that they will face serious consequences for their criminal actions. A probationary sentence will not serve this purpose; a sentence of 24 months in prison will.

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

                              By:   <u>/s/ Adam Bookbinder</u>
                                      Adam J. Bookbinder
                                      Assistant U.S. Attorney

Dated: December 12, 2005

**Cheryl Mongell**
Market Area President
New England

*verizon*

185 Franklin St., Rm. 1414
Boston, MA 02110

Phone 617 743-1453

November 15, 2005

Honorable Joseph L. Tauro
Justice, United States District Court
One Courthouse Way
Boston, MA 02210

Your Honor,

During a several month period from November, 2004 through March, 2005 Verizon was victimized by numerous indiscriminate acts of sabotage which affected thousands of Verizon customers, including businesses and residences in several towns. Although emergency services were not impacted, one of these acts resulted in the loss of service to a local police department. Fortunately, there were no instances of any type of emergency involving the inability of a customer to communicate their needs to the appropriate authority.

The Federal Bureau of Investigation with the assistance of Verizon Security determined that Danny M. Kelly was responsible for these acts of sabotage and subsequent service outages. Ultimately, Mr. Kelly was charged before your court with extortion, and entered a plea of guilty.

During the course of these destructive acts, Mr. Kelly communicated with Verizon via United States mail and a website, making extortionate threats of continued sabotage if the company did not meet his monetary demands. These acts and the threats of additional sabotage negatively impacted the integrity, credibility and reputation of Verizon. Additional acts could have resulted in dire consequences related to public safety.

Verizon was required to extend significant monetary, equipment, and personnel resources in repairing and restoring service to the business community and residences. In total, the company expended $478,812.00 towards achieving a timely resolution to disrupted telecommunication services.

Mr. Kelly, without regard for the public's safety, committed these acts for his own personal gain. In this time of heightened awareness regarding terrorist acts, it is extremely important that access to telephone service, voice and data not be interrupted. Mr. Kelly's actions jeopardized the safety and security of businesses and residents of towns within the Commonwealth of Massachusetts.

On behalf of the affected Massachusetts customers, Verizon respectfully requests that you consider imposing the government recommended sentence in this case.

Thank you for your consideration in this matter.

Respectfully,

Cheryl Mongell